The injunction should issue as prayed for.

---

### EXTENT OF CARRIERS' LIABILITY FOR GOODS LOST IN TRANSIT.

Circuit Court of Cuyahoga County.

THE COHN-GOODMAN COMPANY v. WELLS FARGO EXPRESS COMPANY.

Decided, November 28, 1910.

*Carriers—Freight Charges May Properly be Regulated by Value Placed on the Property Shipped—Limitation on Carriers' Liability Where no Value is Given.*

The liability of an initial carrier for goods lost in transit is limited to the value of the goods as fixed by the contract of shipment, and where the value of the goods was asked at the time of shipment and was not given, and the contract provides that in such cases the company shall not be held for more than fifty dollars, no greater sum than that can be recovered in the event the goods are lost.

*Fred Desberg,* for plaintiff in error.
*R. G. Curren* and *Howard A. Cause,* contra.

MARVIN, J.; HENRY, J., and WINCH, J., concur.

Error to the Court of Common Pleas.

Each party is a corporation, the defendant being a common carrier and the plaintiff a manufacturer of cloaks. The parties here are as they were in the court below.

On the 21st day of August, 1907, the plaintiff delivered to the defendant, at Cleveland, four packages of goods (to be shipped from Cleveland) consigned to M. J. Baum & Co., Oklahoma City, Indiana Territory.    These goods were of the value of several hundred dollars.    Somewhere between Cleveland and Oklahoma City the goods were lost, and the plaintiff sues to recover the value of the goods.    The goods were delivered by the plaintiff to the defendant's wagon driver in Cleveland at the manufactory of the plaintiff.    The custom of the defendant in its dealings with the plaintiff was, that the defendant left with the plaintiff a form of receipt which had printed thereon at the top the following words:

"Not Negotiable (Form 418).                    Read the Conditions
                                                         of This Receipt.

"WELLS FARGO & Co., Express.

"Received from ........ the following articles, which Wells Fargo & Company, a corporation, hereby undertakes to forward to its agency nearest destination, but only upon the following conditions:    The liability of Wells Fargo. & Co. shall be at all times only that of a forwarder, and in no event shall it be liable for loss of or damage to said property caused by or resulting from the same being improperly packed, secured or addressed, nor by or from any act of the law, or of a person acting as an officer of the law, whether acting with or without lawful process, warrant or authority; nor for loss of or damage to fragile articles, unless plainly marked as such, nor for loss of or damage to articles consisting of or contained in glass; nor shall said company be liable for any loss of or damage to said property in any event or for any cause whatever unless said loss or damage shall be proved to have been caused by or to have resulted from the fraud or gross negligence of said company or its servants; nor in any event shall said company be held liable beyond the sum of FIFTY DOLLARS, at not exceeding which sum the said property is hereby valued, unless a different value is hereinabove stated;. nor in any event shall said company be held liable for any loss of or damage to said property unless written claim be made therefor to said company within *ninety days* from this date.    In respect to C. O. D. goods, if the amount to be collected from the consignee on delivery is not paid within thirty days from this date, Wells Fargo & Co. may at its option return the same to the consignor, who shall

pay the charges for transportation both ways. Wells Fargo & Co. is not required to make free delivery of said property beyond its office at any station where no free delivery service is maintained by said company, nor at any station where such free delivery service is maintained beyond and delivery limits established by said company at the date hereof, unless otherwise herein agreed and an additional compensation paid therefor. All of the stipulations and conditions in this receipt shall extend to, and inure to the benefit of each and every person or company to whom this company may entrust or deliver the above described property for transportation, storage or delivery.

"THE PARTY ACCEPTING THIS RECEIPT THEREBY AGREES TO ITS CONDITIONS."

Under these words were columns; at the top of the left hand of which columns was the word "Date"; in the next column the letters "No.," and in the next column the word "Articles"; in the next column the word "Value"; in the next the letters "C. O. D."; in the next the word "Consignee"; in the next the word "Destination"; and in the last of these columns the words "Receipted by." This form of receipt was kept in the office of the plaintiff, being left there by the defendant. The plaintiff was in the habit of shipping goods very frequently through and with the defendant, and when shipments were so made, would write in, under the column marked date, the date on which shipment was made; then under the column next following, and under the letters "No." the number of articles shipped, and under the word "Articles," the kind of article to be shipped; and in the column, under the word "Value," whenever a value was given, this value given by the shipper would be placed; and then under the headings of the several columns, as above indicated, would be written the information required by such headings in said columns.

In the month of August, 1907, a large number of shipments were made by the plaintiff over the line of the defendant, the plaintiff taking a receipt in the form above indicated in each instance. In the column under the words "Receipted by" would be the name written by the particular agent of the express company who took the goods from the shipper; usually this would be the driver of the express wagon. The receipt book which was

on the desk of the plaintiff, as already indicated, shows that fourteen shipments had been made by the plaintiff at the hands of the defendant during the month of August, prior to the one in question; the receipts in each case being entered on the form of receipt which, as already said, was in the keeping of the plaintiff. The shipment for loss of which this suit was brought, was receipted for in this wise: In the column marked "Date" the figures "8-21" appear; under the letters "No." the figure "4"; under the column "Articles" "Pkge"; under the column "Value" and running over into the column "C. O. D." are the words "Value asked and not given"; under the column indicating the name of the consignee and the destination appears "M. J. Baum" and the words "Oklahoma City O. T." and under the column "Receipted by" what seems to be the word "Fost."

The words "value asked and not given" hereinbefore quoted were plainly stamped upon this form of receipt with a rubber stamp. The signature in the column "Receipted by" was written by a driver of one of the express wagons, whose name is Fostbinder, and was written by him as his signature on behalf of the express company. The packages were lost without the fault of the express company, and the sole question for consideration here is whether the express company is liable for the value of the goods lost, or only for the sum of $50, which, by the terms of the receipt hereinbefore quoted, is the maximum amount for which the express company agrees to become liable, in case of the value of the articles shipped is not given.

It is clear that the plaintiff had full knowledge of all that was contained in this receipt, which is accepted, because, as already said, the blank receipt was on its desk and it was in a book of receipts which was left by the defendant in the custody of the plaintiff that it might be ready to be signed by such driver or other agent of the defendant company as should come to the plaintiff from time to time as it should be called to take goods for shipment. The defendant company charged and received for freight on goods shipped over its lines different prices for different values; that is to say, where the goods were of greater value, the freight express charges were more than when they

were of less value. This difference in the rate of prices to be charged was well known to the plaintiff, and was advertised by the defendant by notices posted in two public and conspicuous places near its offices and depots in the city of Cleveland, Ohio, and defendant filed with the Interstate Commerce Commission schedules showing all its rates, fares and charges for the transportation of freight between different points on its route. The defendant had no knowledge of the value of the goods contained in this shipment of four packages. The charge actually made by the defendant for this shipment was the lawful and proper charge for a shipment from Cleveland to Oklahoma City, of a package worth not more than $50. Therefore, as before stated, the sole question in the case here is, whether this contract, as expressed in the form of receipt already quoted, lawfully limits the amount for which the defendant is liable, where the goods are lost without its fault.

The question is raised in this way: At the close of all the evidence, which consisted chiefly and largely of an agreed statement of facts, each party made a motion to the court to direct a verdict. The motion of the plaintiff was that a verdict be directed for $801, which was the value of the goods lost, with interest; whereas, the motion of the defendant was that the court direct a verdict for the plaintiff in the sum of $50, with interest. Both parties have thus submitted to the court the question of law raised, for there was no question as to the facts. The court granted the motion of the defendant and directed a verdict for $50 with interest.

It is provided by the act of Congress known as the Interstate Commerce Act:

"That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed."

Under this statute, it is insisted, that the defendant could not be relieved from payment of the full value of the goods. This question was before the Appellate Term of the Supreme Court of New York in the case of *Richard Schulte et al* v. *Levi C. Weir*, as president of the Adams Express Company, in June, 1908, and it was there held that the contract, as to the limitation of liability to $50 was invalid, as being in violation of the statute, and therefore a recovery could not be limited by reason of the contract.

However, in the case of *Greenwald* v. *Barrett*, 92 Northeastern, 218, the Court of Appeals of New York held that the statute under consideration does not abrogate the right of the carriers to regulate their charges for carriage by the value of the goods, or to agree with the shipper on the valuation of the property, and a contract limiting the carrier's liability to a specific sum, in consideration of the rate charged, regulated by the value of the goods, *is not invalid*.

In this latter case the court, in its opinion, uses this language:.

"The language of the enactment does not disclose any intent to abrogate the right of common carriers to regulate their charges for carriage by the value of the goods, or to agree with the shipper upon a valuation of the property carried."

And, in support of the position taken, the court called attention to the case of *Travis* v. *Wells Fargo & Co.*, 74 Atl., 444, where this language was used, in reference to this same statute:

"The statute means that instead of a common carrier being liable as at common law for any loss caused by itself, it shall not only be liable for such loss, but for any loss caused by a connecting carrier to which it has delivered its goods. There was no intention to impose upon the receiving carrier any additional liability for goods lost by it, and that the loss under the statute, as before, is the loss of goods of such value as the carrier has bargained to carry, and is, under his contract, to be paid for carrying. It was intended to abrogate the right to limit liabilities for loss in accordance with the amount paid for carriage."

In the case of *Bernard* v. *Adams Express Co.*, 91 Northeastern, 325, it is said by the Supreme Judicial Court of Massachusetts,

the Chief Justice speaking of the $50 valuation clause in the express company's receipt, says:

"It is a contract as to what the property is in reference to its value. The purpose of it is not to change the nature of the undertaking of the common carrier or limite his obligation in the care and management of that which is intrusted to him. It is to describe and define the subject-matter of the contract so far as the parties care to define it for the purpose of showing of what value that is which comes into the carrier's possession and for which he must account in the performance of his duty as a carrier."

The theory of these cases is that the statute was designed to prevent the carrier from being relieved from responsibility after the goods had passed into the hands of a connecting carrier, but that it was not intended to impose upon the initial carrier a liability greater than the value of the goods as fixed in the contract of shipment, where the charge for carrying was rated according to the value of the goods.

Entertaining these views, we reach the conclusion that the court was right in directing a verdict for $50 with interest, and no more, and the judgment is affirmed.